CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 21 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEPHEN JAMES LATVIS, | |
| Plaintiff, | Case No. 7:09CV00350 |
| v. | MEMORANDUM OPINION |
| DR. HOPKINS, MS. BALL, | By: Glen E. Conrad |
| Defendants. | United States District Judge |

Plaintiff Stephen James Latvis, a Virginia inmate proceeding pro se, brings this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Latvis alleges that, in violation of his Eighth Amendment rights, the doctor and the nurse practitioner at Keen Mountain Correctional Center ("KMCC") have failed to provide appropriate medical care for his abdominal problems, skin rash, and herpes outbreak. He has also filed a motion for interlocutory relief seeking a transfer. Upon review of the record, the court finds that the complaint must be dismissed.

## Background

Latvis alleges the following sequence of events on which he bases his claims. In March 2009, Latvis started feeling "sharp stabbing, stinging and burning pain inside his rectum and anus." He felt inside himself digitally and discovered "a swollen area on the left side of his rectum inside, just above and inside the anus area which [felt] like a cluster of rough tumorous growths with a rough, raw or ul[cer]ated skin surface that burn[ed]."

In April 2009, Latvis first began filing sick call requests seeking help from the KMCC medical staff for "very intense rectum pain and burning" that he was suffering on a daily basis. The problem has continued and worsened over time. At his first visit to the nurse practitioner, Ms. Ball, on April 9, 2009, Latvis described his symptoms and the growths he had felt when making his own digital examination. He asked Ms. Ball to perform a digital internal rectal

examination or to order a visual internal inspection of the area, using an optical scope, but she refused. She advised Latvis not to stick anything up his rectum.[1] On June 3, 2009, Ms. Ball advised Latvis that she was ordering a colonoscopy that would be performed at a local, outside hospital. On June 16, 2009, however, Dr. Hopkins informed Latvis, "The colonoscopy is disapproved." Latvis told the doctor of his need for an internal rectal examination, but the doctor replied, "It's not happening. I don't care, and I don't wanna hear it." Ms. Ball explained at a visit on July 29, 2009 that because a colonoscopy or other internal examination required transporting Latvis to an outside hospital, he would not be receiving such a test.

From April through July of 2009, Ms. Ball and Dr. Hopkins also refused to perform visual external rectal examinations of the problem Latvis was describing to them. No imaging tests have been performed, such as a biopsy, CT scan, or MRI. On August 3, 2009, Dr. Hopkins examined Latvis. He declared that Latvis had hemorrhoids, which they both knew from previous visits. Dr. Hopkins believed that the rectal pain was related to Latvis' prior complaints of abdominal pain, which had been ongoing since 2007. His abdominal symptoms included "cramping, colon pain, irregular bowel movements (constipation), [and] compressed/flattened stools." In response to these symptoms, Dr. Hopkins has ordered x-rays and taken stool samples and blood tests. He did not, however, order CT scans, MRI imaging, or colonoscopy related to Latvis' continued complaints of abdominal pain. Dr. Hopkins told Latvis that his abdominal symptoms are likely related somehow to a hernia surgery Latvis underwent several years earlier.

In June 2009, Latvis was exposed to the Herpes Simplex Virus ("HSV"). Ms. Ball ordered an HSV2 blood test on July 1, 2009, and blood was drawn on July 9, 2009. Ms. Ball ordered a 14-day treatment of Zovirax, which Latvis received July 19-31, 2009. The original

---

[1] Latvis complains that Ms. Ball teased him in front of other medical staff members about performing his own digital examination of his rectum. She advised him that his rectum was "exit only." He also asserts that Ms. Ball and Dr. Hopkins have expressed impatience with his complaints of rectal pain and see him merely as a pest.

rectal pain and burning continued after completion of this treatment. The treatment also failed to clear up Latvis' active outbreak of HSV.

Latvis exhausted the prison administrative remedies procedure regarding his repeated requests to be referred to a proctologist (for the rectal pain) and a "gastroentrologist [sic]" (for the abdominal pain) and for more thorough diagnostic testing to determine the cause and treatment for these medical conditions. Prison officials found his grievances to be unfounded, based on the Virginia Department of Corrections policy that treating doctors at the prison must first determine that such referrals or testing are warranted by the inmate's medical conditions.

On September 10, 2009, Latvis filed a motion for emergency injunction and/or temporary restraining order. He asserts that in retaliation for this lawsuit, prison medical personnel are conspiring to deny him adequate medical treatment for his HSV outbreak. Specifically, he alleges that although they have continued to provide him with medication for the condition during August and September, they have failed to give him the proper dosage of medication at the proper frequency as required to bring the active outbreak of HSV under control or that they may even be giving him some other medication instead. He alleges that the medication regimen prescribed for him only allows the herpes to become more virulent and painful, to the point that on August 20, 2009, he had a mental collapse because of the pain. The medical staff placed him in a "strap down/strip cell on 15-minute suicide watch," while he was still suffering pain from his herpes and other conditions. He claims that his requests to see a doctor or to receive something to ease his pain were refused. Latvis asserts that these events show how Dr. Hopkins and Ms. Ball have purposely denied him the appropriate medication regimen in a "calculated [effort] to cause [him] to commit suicide to escape the unrelenting, agonizing pain." Latvis seeks an immediate, "emergency security transfer" to Greensville Correctional Center or other prison facility where these defendants will not be involved in determining the course of medical treatment for his conditions.

- 3 -

Case 7:09-cv-00350-GEC-mfu  Document 9  Filed 09/21/09  Page 3 of 7  Pageid#: 52

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." In reviewing the case for possible summary dismissal, the court must accept allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). The factual allegations in the complaint must contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To prove that his course of medical treatment amounted to an Eighth Amendment violation, an inmate must show that prison officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed and that he drew that inference. Farmer v. Brennan, 511 U.S. 825, 847 (1994). On the other hand, negligent misdiagnosis or other instances of medical malpractice do not present constitutional deprivations. Estelle, 429 U.S. at 105-106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. See also Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (because evidence indicated doctors diagnosed and treated plaintiff's symptoms, but did not show that doctors knew his condition involved pituitary gland tumor, failure to diagnose and treat that condition did not state Eighth Amendment claim even though inmate ultimately went blind). A claim concerning a disagreement between an inmate and

medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

After review of the allegations in Latvis' submissions, the court concludes that they fail to state any plausible claim actionable under § 1983. First, for the purposes of this opinion, the court will assume without finding that Latvis has some serious medical needs, particularly given the nature of the pain that he is alleging. Nevertheless, it is clear from Latvis' detailed allegations that the defendant medical personnel are not ignoring any of his medical needs, including his alleged suicidal ideations. They are monitoring his conditions, they have done x-rays and taken stool samples and blood tests to address his abdominal concerns, and they believe the rectal pain is related to those concerns. They have provided medication for the herpes outbreak over several weeks. They have carefully monitored his mental status and safety.

Second, Latvis' disagreement with the medical staff's professional findings – that referral to specialists and specific diagnostic testing are not necessary at this time – is not sufficient to state a constitutional claim here. Similarly, his bald accusations of purposeful mistreatment of his herpes outbreak are insufficient to state a claim of deliberate indifference. His characterizations of defendants' conduct as intentional prevention of healing are based on his nonprofessional opinion of how the herpes medication should be prescribed, his perception that his pain increases between the doses when he thinks it should decrease, and the defendants' alleged impatience with his continued complaints.[2] The court is not unsympathetic to Latvis' complaints of unrelieved pain and suffering. However, the defendants are providing treatment. Under § 1983, the court cannot second guess the decisions of medical professionals as to the appropriate manner in which to address the concerns raised in his complaint. See Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975) (noting that record reflects plaintiff "was

---

[2] His allegations also fail to state any constitutional claim of retaliation, as he fails to allege facts indicating that any of the defendants' treatment decisions are related in any way to his lawsuit. See American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Conclusory and speculative assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

under constant medical supervision from the time of his arrival [at the prison]. Questions of medical judgment are not subject to judicial review."). At the most, Latvis alleges negligent diagnosis and treatment here, and such claims are not actionable under § 1983.[3] Estelle, 429 U.S. at 105-106. Accordingly, the court must dismiss the complaint, pursuant to § 1915A.

For the same reason, the court finds that Latvis is not entitled to interlocutory injunctive relief regarding his treatment for herpes. A district court should issue preliminary injunctive relief only sparingly, using the "balance of hardship" test. In applying this test, the court should consider four factors: 1) whether the plaintiff will suffer immediate and irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendants if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether the public interest lies with granting the relief. Wetzel v. Edwards, 635 F.2d 283 (4th Cir. 1980), citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977). Because defendants have been providing ongoing treatment, Latvis' allegations that the treatment should be different do not support a finding of deliberate indifference. Accordingly, he has not shown a substantial likelihood of success on the merits of his claims, a key element that he must prove under Wetzel and Blackwelder.

In the motion for interlocutory relief, Latvis makes new allegations about recent, past events: being on suicide watch for sixteen days, during which time he was refused the opportunity to see a doctor and refused an opportunity to file grievances or access the courts. These new complaints, however, occurred so recently that Latvis does not allege, nor has he physically had time for, filing grievances and administrative appeals about the incidents. Until he has exhausted available administrative remedies, he cannot bring suit about these claims. See 42 U.S.C. § 1997e(a). Moreover, during the exhaustion process, prison officials may address and solve some of his problems. Thus, absent compliance with § 1997e(a), Latvis cannot make an

---

[3] To the extent that Latvis' allegations might give rise to some claim or claims of medical malpractice under state law, the court declines to exercise supplemental jurisdiction over any such claim, pursuant to 28 U.S.C. § 1367(c).

- 6 -

adequate showing that he will suffer imminent or irreparable harm without interlocutory injunctive relief.

## Conclusion

For the stated reasons, the court concludes that plaintiff's allegations fail to state any constitutional claim actionable under § 1983. The court will, therefore, dismiss the § 1983 complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim and will deny plaintiff's motion for interocutory relief. An appropriate order will enter this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 21st day of September, 2009.

/s/ Glen Conrad
United States District Judge